263 So.2d 573 (1972)
Catherine CLEVELAND, As Administratrix of the Estate of Ejester Cleveland, Deceased, and Catherine Cleveland, As Surviving Spouse of Ejester Cleveland, Deceased, Petitioner,
v.
CITY OF MIAMI, a Municipal Corporation, Respondent.
No. 41396.
Supreme Court of Florida.
May 26, 1972.
Rehearing Denied July 12, 1972.
*574 Robert L Floyd and L. Edward McClellan, Jr., of Frates, Floyd, Pearson & Stewart, Miami, for petitioner.
Alan H. Rothstein, City Atty., and John S. Lloyd, Asst. City Atty., for respondent.
PER CURIAM.
We have for review by petitioner for writ of certiorari a decision of the District Court of Appeal, Third District, reversing a jury verdict and judgment awarding damages to Petitioner, Catherine Cleveland. City of Miami v. Cleveland, Fla. App. 1971, 250 So.2d 298. Because that decision involved issues of great public interest, the District Court of Appeal certified two questions to this Court, giving us jurisdiction under Article V, Section 4(2) of the Florida Constitution, F.S.A.
This cause arose out of a shooting incident in the City of Miami which resulted in the death of Petitioner's husband, Ejester Cleveland. Petitioner, as administratrix of the decedent's estate and as his surviving spouse, brought suit against the City of Miami, contending her husband's death was proximately caused by the negligent *575 firing of a gun by one of the City's police officers.
The testimony at trial was conflicting. The shooting took place at a three-floor, low-income housing complex at 329 Northwest 22nd Street in the City of Miami around 11:30 the evening of August 8, 1968. During the preceding twenty-four hours there had been riots throughout the Miami area, although apparently there had been none in the vicinity of 22nd Street. The police were on the alert for potential disturbances. A police officer in a patrol car passing 329 Northwest 22nd Street saw a large number of people gathered outside the building. Petitioner, her husband, their children, and friends were on a third-floor balcony. This was not unusual because, according to the apartment residents, they frequently stayed outside until midnight or 1:00 A.M. during the summer because of the heat inside the apartments.
When the first patrol car passed the complex there were, according to one of the policemen, "people ... hanging over the balconies and the courtyard was full of people and they were starting to throw rocks and bottles and things like that." In addition, he testified they were yelling obscenities. A lieutenant in the car testified he ordered the crowd to disperse and return to their apartments. He did not have a bull horn, however, and the witnesses who were on the balcony testified they did not hear the alleged dispersal order.
The police then arrested one man who was drunk and belligerent. Following the arrest, they radioed for assistance; they did not, however, say there was an emergency. Shortly thereafter, between thirty and forty policemen arrived in the area. Everything seemed to be under control until what sounded like several gunshots came from the direction of the apartment complex. Without an order to fire, the police immediately shot between 75 and 100 rounds of ammunition into the building. Ejester Cleveland was killed. It is clear he was an innocent bystander on the balcony near his apartment.
Petitioner's witnesses testified the noise which started the shooting came from two glass bottles which were dropped from the second floor. One of the officers testified that at the time he heard the sounds he saw a flash on the roof of the building and saw an "image" up there.
At trial, the defendant City of Miami requested a jury instruction on Section 870.05, Florida Statutes, F.S.A., contending the section absolved it from liability for Cleveland's death. The section provides:
"When killing excused. If, by reason of the efforts made by any of said officers or by their direction to disperse such assembly,[*] or to seize and secure the persons composing the same, who have refused to disperse, any such person or other person present is killed or wounded, the said officers and all persons acting by their order or under their direction, shall be held guiltless and fully justified in law; and if any of said officers or any person acting under or by their direction is killed or wounded, all persons so assembled and all other persons present who when commanded refused to aid and assist said officer shall be held answerable therefor."
The trial court from its consideration of the evidence held the section not applicable in this case and refused to give the instruction.
The jury returned a verdict for Petitioner, and the City of Miami appealed to the District Court of Appeal, Third District. That Court reversed, holding Section 870.05, Florida Statutes, F.S.A., applicable and concluding the section ipso facto as a matter *576 of law absolved the City and its officers from civil as well as criminal liability for Cleveland's death. The District Court ordered the cause reversed and remanded with instructions to enter a directed verdict for the City.
The District Court also held that even if the death were not justified under F.S. Section 870.05, F.S.A., the cause would have to be remanded for new trial because the trial court refused the City an instruction to the jury on assumption of risk.
Because it had considered a novel issue, i.e., the applicability of F.S. Section 870.05, F.S.A., to civil cases, and because it felt its decision passed upon a question of great public interest, the District Court certified the following questions to this Court:
"(1) When by reason of the actions of police or other officers of a municipality, in the performance of duties imposed by § 870.04 F.S. [F.S.A.] incident to dealing with a riotous or unlawful assembly, a participant in the assembly or a person present is killed or injured, does the provision of the statute (§ 870.05 F.S. [F.S.A.]) that for such actions the officers `shall be held guiltless and fully justified in law' operate to relieve them of civil as well as of criminal liability? and (2) if so, then whether, notwithstanding the broad grant of legal justification in § 870.05 F.S. [F.S.A.], it was the legislative intent that the legal justification thus granted should be denied to the officers for a killing or injury occasioned by reason of their actions in dealing with a riotous assembly whenever it should be determined their actions represented force which may have been disproportionate to the situation or provocation, or were such that it should have been foreseeable to the officers that injuries likely would result therefrom." (Emphasis supplied.)
Careful consideration of the recorded evidence in the case has convinced us the certified questions are not germane to this cause. Although they operate to confer jurisdiction of the case upon us, it is not mandatory that we answer them, Zirin v. Charles Pfizer & Co., Fla. 1961, 128 So.2d 594, when we find them inapplicable to the case and we shall refrain from doing so.
The questions are not relevant because under the facts of this case F.S. Section 870.05, F.S.A. is not applicable as a matter of law as the District Court holds.
Before F.S. Section 870.05, F.S.A. can be used to absolve a policeman of liability for a death it must be shown to the satisfaction of the trial judge and jury that the killing occurred during (1) an unlawful riotous or tumultuous assembly; and (2) while the police were attempting to disperse the assembly or seize its members who refused to disperse. We have read the entire record, as we are permitted under the certification, Scherer & Sons, Inc. v. International Ladies' Garment Workers' Union, Local 415, Fla. 1962, 142 So.2d 290, and we find the testimony does not support an uncontradicted finding as a matter of law that the requirements of the section were met.
Whether there was an unlawful riotous or tumultuous assembly was an evidentiary question in this case. There was considerable evidence that the killing did not take place as an integral necessity to dispersal of a crowd or when a member of the crowd who refused to disperse was being arrested. The police were standing on a vacant lot watching a building whose lighted balconies were filled with men, women and children. The only arrest had been made earlier, before all the police cars had arrived. The testimony is conflicting as to whether the people on the balconies had heard an earlier request to return to their apartments. At the time of the shooting things appeared quiet. At least one patrol car had already left the scene. There is *577 strong evidence that the shooting occurred simply as an over-reaction to possible sniper fire. The trial judge concluded as a matter of law Section 870.05 did not ipso facto settle the evidentiary question of negligence and permitted the jury to decide that factual issue. The District Court erroneously held a verdict should be directed for Respondent based on this statute, irrespective of the question of negligence. The trial court was in its province in ruling the statute was not conclusive of the question of negligence as a matter of law to the particular facts of the case and held it inapplicable.
We also find no error in the trial court's decision not to send the question of assumption of the risk to the jury. Florida Standard Jury Instruction 3.8, 31 F.S.A., on "Assumption of Risk" is as follows:
"... [T]he issues for your determination are whether (claimant) knew of the existence of the danger complained of; realized and appreciated the possibility of injury as a result of such danger; and, having a reasonable opportunity to avoid it, voluntarily and deliberately exposed himself to the danger complained of."
According to the note on use of the instruction:
"The committee recommends that the charge on assumption of risk not be given as a matter of course as a second charge on contributory negligence and that it be given only in those cases where the jury may find that claimant `more or less deliberately' and willingly exposed himself to the specific risk which resulted in his injury and damage. Byers v. Gunn, 81 So.2d 723 (Fla. 1955); see also Brady v. Kane, 111 So.2d 472 (3rd D.C.A.Fla. 1959); Bartholf v. Baker, 71 So.2d 480 (Fla. 1954); City of Jacksonville Beach v. Jones, 101 Fla. [95] 96, 133 So. 562 (1931). Compare Crosier v. Joseph Abraham Ford Co., 150 So.2d 499 (3rd D.C.A.Fla. 1963), cert. den. 155 So.2d 693 [Fla.]." (Emphasis supplied.)
The testimony does not show that Cleveland "willingly exposed himself" to the gunfire. He was on the balcony of his home with his family watching a gathering of policemen. They did not expect to be fired upon. Respondent contends Cleveland knew of the potential danger because he instructed his wife to take the children back to their apartment when the police began to gather. Nowhere in the testimony, however, is any indication that he made this statement because he expected the police to shoot. In addition, the facts show that he did not have a "reasonable opportunity" to avoid the danger once he became aware of it. According to police testimony, the shooting lasted between 10 and 15 seconds. The deceased did not have time to leave the balcony. Because the evidence did not show Cleveland knew of the existence of the danger of being shot and deliberately exposed himself to the bullets although he had an opportunity to escape, this was not a proper case for an assumption of risk instruction.
We have carefully reviewed the record and can find no manifest error or abuse of discretion in the trial court's handling of this case. The cause properly went to the jury on the issue of whether or not the police officers, under the circumstances, were negligent in the manner in which they conducted themselves in firing on the building. It lay within the authority of the trial judge to determine from the evidence whether as a matter of law Section 870.05 absolutely precluded a jury determination of the issue of negligence. He ruled that under the particular circumstances the statute was not an absolute bar as a matter of law to jury consideration of the issue of negligence and was inapplicable. If the jury found the police *578 negligent, the City of Miami was properly liable for the torts resulting from that negligence. Hargrove v. Town of Cocoa Beach, Fla. 1957, 96 So.2d 130.
The trial court gave a proper negligence charge:
"Negligence is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like circumstances. Negligence may consist of either doing something that a reasonably careful person would do under like circumstances or in the failure to do that which a reasonably careful person would do under like circumstances. In determining this issue, you should consider whether the force used was that which reasonably prudent police officers would have used based on their knowledge of the situation in this case." (Emphasis supplied.)
It was up to the jury to determine whether the police officers acted as reasonable men under the emergency situation of being faced with possible sniper fire. 2 F. Harper & F. James, The Law of Torts § 16.11 (1956). W. Prosser, Law of Torts § 33; Annot., 80 A.L.R.2d 12 (1961); Comment to Instruction 4.8 "Sudden Emergency," Florida Standard Jury Instructions (1967). The jury determined that, under the facts presented, the police were unreasonable in this case. There is no reason to overturn their verdict.
Accordingly, the decision of the District Court of Appeal, Third District, is quashed and the cause remanded with instructions to reinstate the jury verdict.
ERVIN, CARLTON, McCAIN and DEKLE, JJ., concur.
ROBERTS, C.J., and ADKINS and BOYD, JJ., dissent.
NOTES
[*] The assembly referred to in Section 870.05, Florida Statutes, F.S.A., is defined in Section 870.04, Florida Statutes, F.S.A., as "any number of persons, whether armed or not, [who] are unlawfully, riotously or tumultuously assembled in any county, city or municipality."