503 So.2d 1288 (1987)
Adele VAN SICKLE, Appellant,
v.
ALLSTATE INSURANCE COMPANY, Appellee.
No. 86-158.
District Court of Appeal of Florida, Fifth District.
February 5, 1987.
Rehearing Denied March 17, 1987.
Lamar D. Oxford of Dean, Ringers, Morgan & Lawton, Orlando, for appellant.
F. Bradley Hassell of Smalbein, Eubank, Johnson, Rosier & Bussey, P.A., Daytona Beach, for appellee.
COWART, Judge.
We exercise our discretion under Florida Rule of Appellate Procedure 9.030(b)(4) to review a final order of the County Court of Orange County, Florida, wherein that court certified to be of great public importance the following question:
May an expert witness in the field of orthopedic medicine render expert testimony or opinions regarding the reasonableness and/or[1] necessity of chiropractic care and treatment?[2]
The answer to this question, as worded, is "yes." This answer to this question merely means that an expert in orthopedic medicine is not, for that very reason, unqualified from also being sufficiently knowledgeable of chiropractic healing as to render an expert opinion on the reasonableness of chiropractic care and treatment in a particular case.
An orthopedic physician duly and regularly engaged in the practice of orthopedic *1289 medicine with special professional training and experience in orthopedic medicine is not thereby alone necessarily an expert as to every, or any, aspect of chiropractic healing because these two fields are not the same discipline or school of practice. However, expertise in the field of orthopedic medicine may be relevant to expertise on the necessity and reasonableness of chiropractic care and treatment in a particular case, and a particular orthopedic physician may also be possessed of "special knowledge or skill" (Fla.R.Civ.P. 1.390(a)) [or of specialized "knowledge, skill, experience, training, or education" (§ 90.702, Fla. Stat.)] about chiropractic healing as to be qualified as an "expert witness" entitled to testify in the form of an opinion about some aspect of that subject.[3]
The qualification of an expert witness and the perimeters of his expertise are conclusions of fact to be determined advisedly by the trial judge and affirmed on appeal if supported by competent evidence. We find no error in the trial court's ruling in this case and
AFFIRM.
ORFINGER, J., concurs.
SHARP, J., concurs specially with opinion.
SHARP, Judge, concurring specially.
We should exercise our discretion to assume jurisdiction pursuant to rule 9.030(b)(4) in this case. However, we should restrict the question and its answer to the context and facts of this case, and the rulings made by the county court.[1] The general question answered by the majority was not answered nor ruled upon by the county court.
This is an appeal from a judgment of the county court pursuant to Florida Rule of Appellate Procedure 9.030(b)(4). The issue in the jury case was whether or not Adele Van Sickle's chiropractic treatments, which she received for her back, neck and wrist, were incurred as a result of injuries she received in an automobile accident, thereby entitling her to receive medical insurance payments from Allstate Insurance Company. The jury found in favor of Allstate and Sickle appealed.
Adele Van Sickle sued Allstate Insurance Company for its failure to pay some $3,497.00 for treatments she had received from a chiropractor, Dr. Stansbury. Allstate had required Sickle to have an independent medical exam[2] by Dr. Urbach, an orthopedic surgeon. It ceased further payments under its policy issued to Sickle, based on Dr. Urbach's opinion that the injuries for which she was being treated were not caused by the automobile accident, which had triggered Allstate's liability under the policy.
At the commencement of the trial, the court ruled that Dr. Urbach would be allowed to testify as to the "necessity" for the chiropractic treatments in the context of whether they were necessitated by the automobile accident. It also ruled that Dr. Urbach would not be allowed to testify as to the reasonableness of Sickle's care by the chiropractor, presumably meaning the reasonableness of the frequency, type, and cost of such treatments. The court ruled:
I'll grant the motion in limine that Dr. Urbach's testimony is limited solely to the necessity of medical treatment and not to the reasonableness of it.
The attorneys for both sides accepted the court's ruling. Sickle's attorney did not object to the bulk of Dr. Urbach's testimony. It dealt primarily with whether or not the defects and abnormalities shown by the X-rays of Sickle's spine, neck and hand were caused by the automobile accident, or whether they were caused by long-term degenerative diseases.
*1290 Dr. Urbach testified (without objection from Sickle's attorney), that Sickle's neck and back problems were degenerative in origin, and they were not caused by the automobile accident. He also testified Sickle's hand and wrist problem (capral tunnel syndrome), although possibly caused by the accident, could only be remedied by surgery. He said that the chiropractor's therapy for this injury would not be of any value.
The only objection Sickle's attorney made to Dr. Urbach's testimony came when Allstate's attorney asked him whether or not the chiropractor's spinal and neck manipulations might worsen Sickle's condition. The trial judge sustained the objection, but he later allowed Dr. Urbach to answer the question after Allstate's attorney laid a predicate for the witness' knowledge about the techniques of spinal manipulation.[3] Dr. Urbach testified he was fearful of spinal manipulation being done on persons, such as Sickle, who had arthritic or other degenerative problems.
I agree with all of the trial court's rulings regarding Dr. Urbach's testimony. He was accepted as an expert in his field of medical practice, and it is clear that orthopedic medicine encompasses the causes of injuries to the spine, neck and bones in the hand and wrist, as well as what kinds of medical treatment are suitable to cure or remedy such injuries. It is not necessary to bring in as an expert witness another chiropractor,[4] where the fields of medical expertise of the two professions overlap.[5] Further, Dr. Urbach was shown to have sufficient knowledge about the techniques of spinal manipulation (which perhaps all orthopedic surgeons would not have), in order to permit him to testify about the effects of spinal manipulation on an arthritic or degenerative spine.[6]
Accordingly, I would rephrase the certified questions as follows:
May an expert witness in the field of orthopedic medicine testify as to whether defects or abnormalities in his area of expertise (i.e., spine, neck and wrist or hand) were caused by the trauma of an accident, and whether chiropractic therapy is an effective treatment for such defects or abnormalities?
The answer to these questions should be "yes," with the qualification that the expert must be shown to have some special knowledge about what chiropractic treatment entails (as in this case) to be permitted to testify about the effectiveness of the chiropractic treatment for an injury in the expert's field of expertise.
NOTES
[1] As to the use of "and/or" in legal writings, see Cochrane v. Florida East Coast R. Co., 107 Fla. 431, 145 So. 217 (1932); Health Clubs, Inc. v. State, 338 So.2d 1324 (Fla. 4th DCA 1976).
[2] This question involves an opinion as to whether as to a particular patient chiropractic care and treatment was "reasonable and necessary" (restrictive wording in an insurance policy) and not an opinion as to "the prevailing professional standard of care" of a chiropractic health care provider. See § 768.45, Fla. Stat. Further, the word "reasonable" here relates to the chiropractic care and treatment itself and not the reasonableness of the amount of a particular charge for particular chiropractic services.
[3] See Foster v. Thornton, 125 Fla. 699, 170 So. 459 (1936); Fay v. Mincey, 454 So.2d 587 (Fla. 2d DCA 1984); Mitchell v. Angulo, 416 So.2d 910 (Fla. 5th DCA 1982); Ashburn v. Fox, 233 So.2d 840 (Fla. 3d DCA 1970); Hawkins v. Schofman, 204 So.2d 336 (Fla. 3d DCA 1967), cert. denied, 211 So.2d 215 (Fla. 1968); Musachia v. Terry, 140 So.2d 605 (Fla. 3d DCA 1962).
[1] Cf. Cleveland v. City of Miami, 263 So.2d 573 (Fla. 1972), mandate conformed to 264 So.2d 864 (Fla. 3rd DCA 1972); Revitz v. Baya, 355 So.2d 1170 (Fla. 1977).
[2] § 627.736(7)(a), Fla. Stat. (1985).
[3] Dr. Urbach testified he attended a course in spinal manipulation and had observed it being done by an orthopedic surgeon during Urbach's residency.
[4] This is in contrast to section 768.45(1), Florida Statutes (the medical negligence statute), which requires an expert in the same medical field to testify as to "the prevailing professional standard of care for that health care provider."
[5] See Foster v. Thornton, 125 Fla. 699, 170 So. 459 (1936); Fay v. Mincey, 454 So.2d 587 (Fla. 2d DCA 1984); Mitchell v. Angulo, 416 So.2d 910 (Fla. 5th DCA 1982); Ashburn v. Fox, 233 So.2d 840 (Fla. 3rd DCA 1970), cert. granted, 238 So.2d 428 (Fla. 1970); cert. dismissed, 242 So.2d 873 (Fla. 1971); Hawkins v. Schofman, 204 So.2d 336 (Fla.3rd DCA 1967), cert. denied, 211 So.2d 215 (Fla. 1968); Musachia v. Terry, 140 So.2d 605 (Fla. 3rd DCA 1962).
[6] Fla.R.Civ.P. 1.390(a); § 90.702, Fla. Stat. (1985).