621 So.2d 1380 (1993)
Jessie ALFORD, Appellant,
v.
G. PIERCE WOODS MEMORIAL HOSPITAL AND State of Florida/Division of Risk Management, Appellees.
No. 91-3297.
District Court of Appeal of Florida, First District.
July 7, 1993.
Rehearing Denied August 24, 1993.
Brian O. Sutter, Port Charlotte, Bill McCabe, Longwood, for appellant.
Michael F. Tew of Tew & Truitt, P.A., Fort Myers, for appellees.
WEBSTER, Judge.
In this workers' compensation case, claimant seeks review of an order which denied her claim seeking authorization of chiropractic treatment. We conclude that the record contains competent substantial evidence to support the order. Therefore, we affirm.
It is undisputed that claimant sustained injuries "arising out of and in the course of employment" on two occasions. In December 1988, claimant injured her neck, back, shoulders, knee and left elbow. In September 1989, after claimant had been released to return to full-duty work, she injured her fingers.
Since her first injuries, claimant has been treated by Dr. Howard Kessler, a board-certified orthopedic surgeon. Dr. Kessler has diagnosed claimant as suffering from "cervical and lumbar spondylosis or arthritis." He opined that claimant had suffered from "a pre-existing arthritic condition which was exacerbated by her work related injury." According to Dr. Kessler, because of her arthritis, claimant was not going to "get better." She would continue to experience good periods and bad periods, as she had for some time. Dr. Kessler said that there was little that he could offer claimant in the way of new treatment. He had prescribed physical therapy (which had included *1381 traction, heat, ultrasound and electrical stimulation) for some time, for temporary relief of claimant's symptoms; and recommended that claimant continue to receive physical therapy "as needed."
Claimant testified that the physical therapy prescribed by Dr. Kessler provided only temporary relief from her symptoms. She said that she wanted to be treated by Dr. Louis Kirschner, a chiropractor, because her husband had been treated successfully by Dr. Kirschner, and she felt that Dr. Kirschner could achieve similar results with her.
Dr. Kirschner testified that he is a chiropractic physician. Based upon his examination of claimant, Dr. Kirschner diagnosed claimant as suffering from cervical neuralgia, cervical myofascitis, a strain or sprain of the thoracic spine, a lumbar sprain or sprain, sacroiliac disorder and temporal mandibular joint pain-dysfunction syndrome. Based upon his diagnosis, Dr. Kirschner concluded that claimant "was a candidate for chiropractic therapy ... [b]asically adjustments or manipulations to correct the osseous disrelationships of her entire spine and sacroiliac joints." In addition, he said that he would use "traction in the low back," "[e]xercises" and "some electrical stimulation." He opined that "chiropractic treatment would be beneficial to [claimant] because the key thing here is to get the vertebrae that are out of place, or what we call subluxated, back into their proper respective position and functioning again." He saw nothing about claimant's condition to suggest that it would be inappropriate to treat her in such a way.
Over objection that he was unqualified to render such opinions, Dr. Kessler testified that he tried to "read a lot of chiropractic literature"; that he was "familiar with the general nature of treatment modalities that a chiropractor ... offers"; and that he had "had training in some forms of manipulation." He testified that, within a reasonable degree of medical probability, it was his opinion that, while "manipulation in the proper hands in the proper situation is beneficial," in claimant's case manipulation might well "be harmful for her." He explained that "arthritic joints which would be placed through a motion that they would not normally be placed through in some respects would be like going through the trauma or the initial accident that the patient describes. It could increase the symptoms." He also testified that the treatments other than manipulation which were normally used in the practice of chiropractic were not significantly different from those already available to claimant through physical therapy.
The judge of compensation claims concluded that Dr. Kirschner should not be authorized because (1) based upon Dr. Kessler's testimony, manipulation would be inappropriate, given claimant's condition; (2) other than manipulation, claimant was already receiving essentially the same treatment that Dr. Kirschner recommended; and (3) claimant's request was "motivated by unrealistic expectations," because she believed that chiropractic treatment would result in "a cure." Claimant's principal argument on appeal is that the conclusions of the judge of compensation claims are not supported by competent substantial evidence because Dr. Kessler, an orthopedic surgeon, was not qualified to render opinions on the subject of the appropriateness of chiropractic treatment; therefore, Dr. Kirschner's testimony that chiropractic treatment was appropriate was uncontroverted. We are unable to accept claimant's argument.
Section 440.13(2)(a), Florida Statutes (1991), requires the employer to "furnish to the employee such medically necessary remedial treatment, care, and attendance by a health care provider and for such period as the nature of the injury or the process of recovery may require ..." (emphasis added). Section 440.13(1)(d), Florida Statutes (1991), defines "medically necessary," in relevant part, as follows:
"Medically necessary" means any service or supply used to identify or treat an illness or injury which is appropriate to the patient's diagnosis, consistent with the location of service and with the level of care provided. The service should be widely accepted by the practicing peer *1382 group, should be based on scientific criteria, and should be determined to be reasonably safe. ...
(Emphasis added.) While it may well be true, as claimant argues, that in the majority of cases only a similar "health care provider" will possess the qualifications necessary to permit him or her to testify regarding whether requested care or treatment is "medically necessary," that is not so in this case.
The Florida Evidence Code applies to workers' compensation proceedings. See, e.g., Martin Marietta Corp. v. Roop, 566 So.2d 40 (Fla. 1st DCA 1990); Odom v. Wekiva Concrete Products, 443 So.2d 331 (Fla. 1st DCA 1983). This includes section 90.702, which relates to testimony by experts. As a general rule, "[t]he determination of a witness's qualifications to express an expert opinion is peculiarly within the discretion of the trial judge, whose decision will not be reversed absent a clear showing of error." Ramirez v. State, 542 So.2d 352, 355 (Fla. 1989). See also Charles W. Ehrhardt, Florida Evidence § 702.1 at 469 (1992 ed.). We fail to see why a different standard should be applied in workers' compensation cases.
There can be no question but that, as an orthopedic surgeon, Dr. Kessler possesses the qualifications necessary to permit him to offer opinions regarding the effect of arthritis upon a person's joints in general, and spine in particular. Likewise, there can be little question regarding Dr. Kessler's qualifications to offer opinions as to the likely effect of unusual or abnormal movement of the spine upon one suffering from arthritis. Such opinions are clearly based upon his knowledge acquired as an orthopedic surgeon. The only real question presented is whether Dr. Kessler possesses enough knowledge about chiropractic manipulation to be able to render an opinion as to the effect of such movement upon the spine of someone like claimant, who is suffering from arthritis. Dr. Kessler testified that he tried to "read a lot of chiropractic literature"; that he was "familiar with the general nature of treatment modalities that a chiropractor ... offers"; and that he had "had training in some forms of manipulation." We believe that such testimony was sufficient to permit the judge of compensation claims to conclude that Dr. Kessler knew enough about chiropractic manipulation to opine whether, from a medical standpoint, such movement of the spine would be likely to help or to harm claimant. In fact, we fail to see any meaningful distinction between such testimony and testimony that, within a reasonable degree of medical probability, a particular type of unusual or abnormal movement, such as might occur during a fall or an auto accident, would be likely to cause damage to the spine, or a cervical or lumbar sprain or strain. Clearly, an orthopedic surgeon would be permitted to offer the latter opinions.
Finally, we note that, but for the fact that this is a workers' compensation case, the operative facts are virtually indistinguishable from those in Van Sickle v. Allstate Ins. Co., 503 So.2d 1288 (Fla. 5th DCA 1987). In Van Sickle, the plaintiff sued her insurer when it refused to pay for certain chiropractic treatments. The issue tried was whether the treatments had been "`reasonable and necessary'" (id. at 1288 n. 2) regarding injuries allegedly sustained in an auto accident. At trial, plaintiff objected to a question posed by the insurer to its expert witness, who was an orthopedic surgeon, as to "whether or not the chiropractor's spinal and neck manipulations might worsen [plaintiff's] condition." Id. at 1290. Initially, the trial judge sustained the objection. However, after the expert testified that he had some familiarity with manipulation based upon a course he had taken and some observation during residency, the trial judge allowed the expert to testify that "he was fearful of spinal manipulation being done on persons, such as [plaintiff], who had arthritic or other degenerative problems." Id.
On appeal by plaintiff, the court affirmed. The majority explained its decision as follows:
An orthopedic physician duly and regularly engaged in the practice of orthopedic medicine with special professional *1383 training and experience in orthopedic medicine is not thereby alone necessarily an expert as to every, or any, aspect of chiropractic healing because these two fields are not the same discipline or school of practice. However, expertise in the field of orthopedic medicine may be relevant to expertise on the necessity and reasonableness of chiropractic care and treatment in a particular case, and a particular orthopedic physician may also be possessed of "special knowledge or skill" ... about chiropractic healing as to be qualified as an "expert witness" entitled to testify in the form of an opinion about some aspect of that subject.
The qualification of an expert witness and the perimeters of his expertise are conclusions of fact to be determined advisedly by the trial judge and affirmed on appeal if supported by competent evidence.
Id. at 1288-89 (footnote omitted). In her concurring opinion, Judge Sharp pointed out that
it is clear that orthopedic medicine encompasses the causes of injuries to the spine, neck and bones in the hand and wrist, as well as what kinds of medical treatment are suitable to cure or remedy such injuries... . Further, [the orthopedic surgeon] was shown to have sufficient knowledge about the techniques of spinal manipulation (which perhaps all orthopedic surgeons would not have), in order to permit him to testify about the effects of spinal manipulation of an arthritic or degenerative spine.
Id. at 1290.
We agree with the analysis contained in both the majority and special concurring opinions in Van Sickle. We conclude that the record contains competent substantial evidence to sustain the finding of the judge of compensation claims "that chiropractic manipulation would be inappropriate given the claimant's arthritic condition." Accordingly, the evidence is sufficient to support the decision of the judge of compensation claims to deny the request to authorize Dr. Kirschner, because the requested chiropractic treatment was not "medically necessary." Therefore, we affirm.
AFFIRMED.
BARFIELD, J., concurs.
ERVIN, J., dissents with written opinion.
ERVIN, Judge, dissenting.
I would reverse the order denying appellant's claim seeking authorization of chiropractic treatment for the reason that the only evidence supporting the denial was the opinion testimony of Dr. Kessler, an orthopedic physician, which, in my judgment, is incompetent because of the unique provisions of Section 440.13, Florida Statutes (1987). In so concluding, I think it helpful to discuss some additional facts not recited in the majority's opinion.
While under the care of Dr. Kessler, claimant testified that she had received 221 physical therapy treatments, and that her pain had not abated, but in fact had become more severe during the three years following the occurrence of her injuries. Claimant stated that it was her fervent desire to be able to do the things that she had always done before the work-related accidents; that she wished to live a normal life, explaining, "I am just 42 years old and I plan on doing a whole lot of things with my life besides hurting. I just want some relief." Contrary to Dr. Kessler's testimony stating that chiropractic manipulation might be harmful to claimant, Dr. Kirschner, a chiropractic physician, considered that such treatment would be beneficial to her and further opined that if claimant did not receive such relief, she would eventually develop weakness in the ligaments, including the discs in the lumbar sacral spine, which would predispose her to disc and possible nerve root problems in the lower extremities.
If the present case involved only a contest of conflicting opinions by two physicians licensed in different fields of practice, I could agree with the majority that the order should be affirmed because it would be supported by competent, substantial evidence. The threshold question requiring *1384 decision, however, is whether Dr. Kessler, a physician not licensed within the practicing peer group whose care claimant requested, was qualified under the provisions of section 440.13 to express the opinion that chiropractic treatment was not reasonable and necessary.
In our interpretations of section 440.13(3) pertaining to a claimant's specific request for chiropractic care, we have held that an employer's provision of an orthopedist did not satisfy the employer's statutory obligation, and that the employer was therefore required to pay for chiropractic treatment if such treatment was determined to be reasonable and necessary by a judge of compensation claims (JCC). City of Hialeah v. Jimenez, 527 So.2d 936 (Fla. 1st DCA 1988); Kirkland v. Harold Pratt Paving, Inc., 518 So.2d 1320 (Fla. 1st DCA 1987), review denied, 525 So.2d 878 (Fla. 1988). We have, moreover, recognized that the care offered by orthopedists may be functionally different from chiropractic care. Gust K. Newberg Constr. Co. v. Warren, 449 So.2d 934, 935 (Fla. 1st DCA 1984). Indeed, in a different context, we have stated that an orthopedist's opinion as to the need for psychiatric care is not competent, substantial evidence as to that issue. Caldwell v. Halifax Convalescent Ctr., 566 So.2d 311, 313 (Fla. 1st DCA 1990); Norell Corp. v. Carle, 509 So.2d 1377, 1379 (Fla. 1st DCA 1987).
In no previous opinion, however, have we expressly decided whether a physician, not licensed within the same school of practice as that requested by an employee, is qualified to express an opinion as to the reasonableness and necessity of the practitioners' care, pursuant to the provisions of section 440.13, notwithstanding that the witness may satisfy the qualifications of an expert, as provided in Section 90.702, Florida Statutes, by reason of his knowledge and education. I am of the view that Dr. Kessler is not qualified by virtue of section 440.13 to give any such opinion, and it is therefore immaterial, for the reasons stated infra, that he may otherwise be qualified as an expert under section 90.702. In reaching this conclusion, I refer to section 440.13(1)(c), which defines "medically necessary" as

any service or supply used to identify or treat an illness or injury which is appropriate to the patient's diagnosis, consistent with the location of service and with the level of care provided. The service should be widely accepted by the practicing peer group, should be based on scientific criteria, and should be determined to be reasonably safe.
(Emphasis added.)
The above language requires that the requested service "be widely accepted by the practicing peer group." I think it obvious, by examining the legislative reference to the term "peer," that it was not reasonably within the legislature's contemplation that physicians of one school of practice would be considered qualified to give opinions regarding the appropriateness of requested treatment by physicians of another licensed school or community of practice. Although peer is not defined in section 440.13, the dictionary defines it as "a person or thing of the same rank, value, quality, ability, etc." Webster's New World Dictionary 1048 (2d college ed. 1980).
When comparing the statutory term, "practicing peer group," with the term "peer review committee," used in other portions of section 440.13, I think it reasonably clear, given the definition of peer, that the former term means simply the same licensed school of practice. In so saying, I note that section 440.13(1)(e) defines "peer review committee" to mean "a committee composed of physicians licensed under the same authority as the physician who rendered the services being reviewed." (Emphasis added.) While the term "peer review committee" is not used in regard to that portion of section 440.13(3) relating to a requested change in the health care provided an employee, but rather is specifically applied to review of overutilization of services rendered by health care providers, I consider that the manner in which the term is otherwise applied in the statute demonstrates that the legislature intended that only licensed physicians of the same school as the physician whose care is requested *1385 are qualified to state whether the requested care is reasonable and necessary. Moreover, it appears that in common practice only those physicians of the same community as the physician whose services are reviewed serve on review committees. See, e.g., Lamounette v. Akins, 547 So.2d 1001, 1002 (Fla. 1st DCA 1989) (to determine whether chiropractic physician over utilized services he rendered to the injured employee, the physician's records were submitted to the Chiropractic Peer Review Committee).
My interpretation of section 440.13 is consistent with the general rule recognizing that physicians of one school are incompetent to testify in malpractice actions against physicians of other schools regarding whether such physicians' treatment conformed with the requisite degree of skill and care in their practice area, and that defendants in such actions are entitled to limit testimony to that of competent practitioners of their own schools of medicine.[1] 61 Am.Jur.2d Physicians, Surgeons, & Other Healers § 353 (1981).
The majority, however, ante at 5, refers to the Florida Evidence Code, specifically section 90.702, relating to the testimony of experts, which provides in part that "a witness [may be] qualified as an expert by knowledge, skill, experience, training, or education." The majority reasons therefrom that because Dr. Kessler adequately demonstrated his expertise in the subject of his opinion, competent, substantial evidence exists to support the order entered. The majority refers as well to Martin Marietta Corp. v. Roop, 566 So.2d 40 (Fla. 1st DCA 1990), and Odom v. Wekiva Concrete Products, 443 So.2d 331 (Fla. 1st DCA 1983), as stating that the Evidence Code applies to the Workers' Compensation Law. Those cases hold only that the portion of the Evidence Code which precludes the admission of hearsay evidence applies to workers' compensation proceedings. Neither opinion supports the majority's conclusion that section 440.13 permits a physician outside the practicing peer group of another physician to testify that the requested treatment of a member of the different group is not reasonable or necessary. And I find nothing in section 440.13 evincing any legislative intent to incorporate the provisions of section 90.702 therein. Indeed, Section 90.103(1), Florida Statutes (1987), states that the Evidence Code applies to the same proceedings to which the general law of evidence applied before the effective date of the code, "[u]nless otherwise provided by statute." (Emphasis added.)
It is axiomatic that a more specific statute (here section 440.13) dealing with a particular subject is controlling over a statute that covers the same subject more generally. Department of Health & Rehab. Servs. v. American Healthcorp of Vero Beach, Inc., 471 So.2d 1312, 1315 (Fla. 1st DCA 1985), opinion adopted, 488 So.2d 824 (Fla. 1986). As an example, Professor Ehrhardt observes: "The Florida Legislature has enacted special limitations on the qualifications of experts in medical malpractice actions." Charles W. Ehrhardt, Florida Evidence § 702.1, at 468 (1992). Thus, section 766.102(2)(c), Florida Statutes (1991), restricts the expert testimony of health care providers to "similar health care providers," as defined in section 766.102(2)(a) or (b), as practitioners in the malpractice defendant's speciality or the same school of practice. Subsection (2)(c), however, permits one who does not meet the definition of similar health care provider to submit expert testimony as to the prevailing professional standard of care in a given field of medicine if such person, "to the satisfaction of the court, possesses sufficient training, experience, and knowledge as a result of practice or teaching in the specialty of the defendant or practice or teaching in a related field of medicine... . within the 5-year period before the incident giving rise to the claim."
Although section 766.102(2)(c) relaxes the general rule precluding one who is not a *1386 similar health care provider from offering an opinion against one from a different medical discipline or specialty, it is important to observe that the provision requires that before such person may qualify as an expert to testify whether a defendant's action conformed to the prevailing professional standard of care, the witness must, at the very minimum, have training, experience, and knowledge in a "related field of medicine." (Emphasis added.) For example, in Cross v. Lakeview Ctr., Inc., 529 So.2d 307 (Fla. 1st DCA 1988), a clinical psychologist was held not competent to express an opinion as an expert that the defendant, a psychiatrist, did not deviate from the psychiatric standard of care by not performing certain psychological tests, in that the psychologist did not possess training, experience, or knowledge as a result of practice or teaching in a related field of medicine. By analogy, the legislature of Montana enacted a workers' compensation statute restricting the making of impairment ratings to licensed medical physicians only. See Weis v. Division of Workers' Compensation of Dep't of Labor & Indus., 232 Mont. 218, 755 P.2d 1385 (1988). And see, e.g., Wacker v. Park Rural Elec. Co-op., Inc., 239 Mont. 500, 783 P.2d 360 (1989) (chiropractor disqualified from testifying as to a plaintiff's impairment rating in a personal injury action).
Because the language of a particular statute may restrict the right of a person from rendering an opinion in a given case, notwithstanding that such person may otherwise meet the qualifications of an expert witness pursuant to section 90.702, the majority's reliance on Van Sickle v. Allstate Insurance Co., 503 So.2d 1288 (Fla. 1st DCA 1987), is simply inapposite to a proper resolution of the present issue. The court in Van Sickle affirmed a trial court's order permitting an orthopedic physician to testify as to the reasonableness and necessity of chiropractic care in an action brought by an insured against his no-fault insurer to compel the insurer to pay for such care. Unlike the case at bar, no statutory language was implicated limiting the right of a physician of a different school of practice from that of the physician whose requested services were under review to offer an opinion as to the appropriateness of such treatment.
If the only limitation placed upon Dr. Kessler's right to testify was as provided in section 90.702, I could agree with the majority that the JCC did not abuse his discretion in deciding that Dr. Kessler, an orthopedic surgeon, possesses the necessary knowledge, education, etc., to opine that chiropractic care was not reasonable and necessary. Because, however, the provisions of the more specific section 440.13 restrict such testimony to the same practicing peer group or discipline as that from which the treatment is sought, the opinion testimony of a physician from a different practicing peer group must be considered incompetent as to the reasonableness and necessity of such solicited care. And, as the only competent evidence submitted to that issue was from Dr. Kirschner, a physician within the same practicing peer group, the JCC's order denying the claim for chiropractic treatment should be reversed and the cause remanded with directions that the claim be approved.
NOTES
[1] The general rule has been modified by statute in Florida. See § 766.102(2), Fla. Stat. (1991), and discussion infra.