649 So.2d 224 (1995)
Cloyd E. CLAIR, Appellant,
v.
GLADES COUNTY Board of Commissioners and Insurance Servicing & Adjusting Company, Appellees.
No. 83213.
Supreme Court of Florida.
January 19, 1995.
Brian C. Blair of Blair & Blair, P.A., Fort Myers, for appellant.
Gerald W. Pierce of Henderson, Franklin, Starnes & Holt, P.A., Fort Myers, for appellees.
J. Riley Davis of Katz, Kutter, Haigler, Alderman, Marks & Bryant, P.A., Tallahassee, amicus curiae for American Ins. Ass'n.
WELLS, Justice.
We have for review a decision presenting the following question certified to be of great public importance:
WHETHER SECTION 440.13, FLORIDA STATUTES, PERMITS A PHYSICIAN, PRACTICING OUTSIDE THE PEER GROUP OF THE PHYSICIAN WHOSE CARE WAS AUTHORIZED, TO OPINE AS AN EXPERT THAT THE FURNISHED *225 CARE IS NOT REASONABLE AND NECESSARY?
Clair v. Glades County Board of Commissioners, 635 So.2d 84, 87-88 (Fla. 1st DCA 1994). We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution, and we answer the question with a qualified yes. We conclude that section 440.13, Florida Statutes (1983),[1] does not preclude physicians licensed under one statute from testifying regarding the reasonableness and necessity of treatment by a physician licensed under another statute, provided the testifying physician is, based on training and experience, competent to render an expert opinion concerning treatment for the illness or injury under review.
On November 3, 1983, Cloyd E. Clair sustained a back injury while working at the Glades County Sheriff's Department (employer). She began receiving workers' compensation benefits as a result of the injury. In 1986, Clair's right to future compensation benefits was settled by a lump-sum payment of $25,000, but the settlement did not affect her right to the future receipt of medical benefits. The employer, through its carrier Insurance Servicing and Adjustment Company, continued to intermittently cover[2] the cost of Clair's chiropractic treatment until March 3, 1989. At that time, the employer/carrier discontinued payments based on the evaluations of Dr. Arpin, a neurosurgeon, and Dr. Conant, an orthopedic surgeon.
Dr. Arpin examined Clair on several occasions and determined that she was no longer in need of chiropractic treatment after March 3, 1989. Arpin concluded and later testified that Clair's condition, mild myofascial syndrome, was best treated by simple exercise and that weekly chiropractic treatment was not in her best interest. Dr. Conant never actually examined Clair but reached similar conclusions based on his evaluation of Clair's medical records. Both doctors attested that further chiropractic treatment was neither reasonable nor necessary.
The carrier sent Dr. Crowley, Clair's chiropractor, a notice to controvert chiropractic care prior to discontinuing payment. The notice to controvert stated that the carrier was no longer responsible for Clair's chiropractic treatment because her current complaints were unrelated to the work-related injury she sustained in November 1983. The notice did not specifically deauthorize treatment, and consequently, Dr. Crowley continued to treat Clair. A dispute subsequently arose over whether the carrier was responsible for the cost of the continued care.
In accordance with Chapter 440, Clair filed a claim for benefits and an application for hearing seeking, among other things, recognition of Dr. Crowley as an authorized treating chiropractor and payment of Dr. Crowley's outstanding medical bills. The employer/carrier, relying on the deposition testimony of Drs. Arpin and Conant, claimed that Dr. Crowley was deauthorized because further chiropractic treatment was no longer reasonable or necessary. At a final hearing on the matter, Clair's attorney objected to the opinion testimony of Drs. Arpin and Conant, claiming that the reasonableness of a chiropractor's treatment should be determined by a group of the chiropractor's peers. The judge of compensation claims (JCC) nevertheless determined that additional chiropractic care was unnecessary based on the deposition testimony of those physicians. Accordingly, the JCC held that although the carrier did not officially deauthorize treatment through its notice to controvert,[3] it was not liable for additional chiropractic charges.
*226 Clair appealed, and the First District requested supplemental briefs on the issue of whether section 440.13 permits a physician practicing outside the peer group of a physician whose care has been authorized to testify as an expert that the furnished care is not reasonable and necessary.[4] After reviewing the case, the court opined that by using the term "practicing peer group" in the definition of "medically necessary," the legislature indicated that it intended to have a group comprised of doctors licensed under the same authority as the treating physician deciding whether treatment is reasonable and necessary. See § 440.13(1)(c), Fla. Stat. (1983). In support of this conclusion, the court relied on section 440.13(1)(e), which defines "peer review committee" as a "committee composed of physicians licensed under the same statutory authority as the physician who rendered the serviced being reviewed." Although the court's majority surmised that section 440.13 should be interpreted to preclude reliance on testimony from doctors outside the treating physician's field, it ultimately held that its prior decision in Alford v. G. Pierce Woods Memorial Hospital, 621 So.2d 1380 (Fla. 1st DCA 1993), required approval of the JCC's decision. Clair, 635 So.2d at 87.
We agree with the majority's conclusion that Alford should control the outcome of this case. Further, we agree with Judge Kahn's conclusion that Alford was correctly decided. We hold in accord with Judge Kahn's separate opinion that the statutes regulating physicians do not support the majority's interpretation that section 440.13 permits only a doctor licensed under the same authority to testify as to the reasonableness and necessity of another doctor's care. We adopt the following analysis of Judge Kahn in support of our conclusion.
A medical doctor in Florida is authorized to diagnose, treat, operate, or prescribe for any human disease, pain, injury, deformity, or other physical or mental condition (e.s.). § 458.305, Fla. Stat. (1993). Osteopathic physicians have "the same rights as physicians and surgeons of other schools of medicine with respect to the treatment of cases or holding of offices in public institutions." Section 459.011(2), Fla. Stat. (1993). Practitioners of podiatric medicine in Florida may engage in "the diagnosis or medical, surgical, palliative, and mechanical treatment of ailments of the human foot and leg, and may prescribe drugs that relate to this scope of practice." Section 461.003(3), Fla. Stat. (1993).
The definition of practice of chiropractic, which is the field involved in the present case, is far more specifically delineated by the Florida Statutes. In general, a chiropractic physician may "examine, analyze, and diagnose the human living body and its diseases by the use of any physical, chemical, electrical, or thermal method; use the x-ray for diagnosing; phlebotomize ...; and use any other general method of examination for diagnosis and analysis taught in any school of chiropractic." Section 460.403(3)(b), Fla. Stat. (1993). Chiropractic physicians may "adjust, manipulate, or treat the human body by manual, mechanical, electrical or natural methods; by the use of physical means or physiotherapy, including light, heat, water, or exercise; by the use of acupuncture; or by the administration of foods, food concentrates, food extracts, and proprietary drugs and may apply first aid and hygiene, but chiropractic physicians are expressly prohibited from proscribing or administering to any person any legend drug, from performing any surgery (except as specifically provided in the statute), or from practicing obstetrics." Section 460.403(3)(c), Fla. Stat. (1993). Chiropractic physicians "may analyze and diagnose physical conditions of the human body to determine the abnormal functions of the human organism and to determine such functions as are abnormally expressed and the cause of such abnormal expression." Section 460.403(3)(e), Fla. Stat. (1993).
A review of these statutory standards reveals that medical doctors and osteopathic *227 physicians are qualified and licensed in the broadest manner. Their qualifications and licensure would appear to encompass those areas of practice allowable for podiatrists and chiropractors. The regulatory statutes do not, then, suggest an automatic disqualification of medical doctors to give testimony such as that relied on by the JCC in this case.
Clair, 635 So.2d at 88-89 (Kahn, J., concurring in part and dissenting in part) (footnote omitted).
We note, as did Judge Kahn, that the district court's preferred interpretation of section 440.13 would prevent a physician who is certified to practice in one field from testifying regarding care provided by another physician who is certified in the same field but licensed under a different regulatory statute. We cannot conclude that the legislature intended such a result.[5]
Clair maintains that even under Alford, Drs. Conant and Arpin should not have been allowed to testify because the record fails to show that these physicians' expertise included knowledge about chiropractic medicine. In Alford, the court approved an orthopedic surgeon's testimony as to the reasonableness and necessity of chiropractic care only after determining there was sufficient evidence to support the JCC's conclusion that the orthopedic surgeon knew enough about the chiropractic treatment to competently testify as to whether the treatment would help or harm the claimant. See also Spears v. Gates Energy Products, 621 So.2d 1386 (Fla. 1st DCA 1993). We agree that such knowledge is a necessary part of an expert's qualifications. The district court in the instant case found that the record did not include any evidence of such knowledge. Accordingly, we agree with the district court's majority that the JCC's reliance on Dr. Conant's testimony was error because Clair timely objected to the doctor's qualifications.[6] The error, however, is not fatal to the JCC's determination because, as the JCC noted in his order, Dr. Conant's opinions were accepted over those of Dr. Crowley only because they were consistent with and supported by the testimony of Dr. Arpin. Because Clair did not timely object to Arpin's testimony, the district court assumed, as do we, that Dr. Arpin was fully qualified to testify about chiropractic medicine.
Accordingly, we approve the majority's final decision but do so based upon the reasons set forth in this opinion. We expressly reject the majority's suggestion that the First District's prior decision in Alford was wrongly decided.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and ANSTEAD, JJ., concur.
NOTES
[1] All subsequent references to section 440.13 pertain to the 1983 version of the statute unless otherwise indicated.
[2] The record in this case indicates that treatment by Dr. Crowley, a chiropractor, was deauthorized and subsequently reauthorized on several occasions.
[3] In his order, the JCC explained that but for the issue of authorization he would not have jurisdiction over the case. The court concluded that if the only issue were the reasonableness and necessity of the treatment, then the proper means of resolution of this dispute would be a peer review and a section 120.57, Florida Statutes, proceeding. We decline to comment on the JCC's conclusion with regard to this matter because the procedural aspects of the authorization and deauthorization processes are not relevant to our determination of who may testify as to the reasonableness and necessity of a physician's treatment pursuant to section 440.13.
[4] Section 440.13(2)(b) provides that:

If the employer fails to provide such [medically-necessary remedial] treatment, care, and attendance after request by the injured employee, the employee may do so at the expense of the employer, the reasonableness and necessity to be approved by the deputy commissioner.
[5] While section 440.13(1)(c) requires any medically necessary service to be widely accepted by a physician's practicing peer group, that does not mean that only members of the practicing peer group may testify whether a particular service is medically necessary. Moreover, we observe that in 1993, the phrase "practicing peer group" was removed from the definition of "medically necessary" in section 440.13(1)(c) and replaced with the phrase "among practicing health care providers," a term expressly defined within the statute. Ch. 93-415, § 17, at 62, 98, Laws of Fla. Although the amendment is not directly applicable here, we may look to acts passed at subsequent sessions in order to discern legislative intent. See Murthy v. N. Sinha Corp., 644 So.2d 983 (Fla. 1994); Watson v. Holland, 155 Fla. 342, 20 So.2d 388 (1944), cert. denied, 325 U.S. 839, 65 S.Ct. 1408, 89 L.Ed. 1965 (1945).
[6] As the district court noted, preservation of error in this case was governed by Florida Rule of Civil Procedure 1.330(d)(3)(A). See Quinn v. Millard, 358 So.2d 1378 (Fla. 3d DCA 1978).