PER CURIAM.
Alvin Freeman appeals an order which denied his claim for workers’ compensation benefits relating to a compensable back injury. We conclude that the order recites certain findings of fact for which there is no record support and, therefore, reverse and remand with directions for reconsideration.
Initially, appellant challenges the admission of an alleged hearsay document prepared by the employer’s safety director. We agree that the document contains hearsay subject to no exception and should not have been admitted. While receiving the document into evidence, the judge of compensation claims (JCC) acknowledged that it was hearsay, but stated that he would make no finding which was supported only by hearsay. Thus, although the document was erroneously received, it was not received for proving the truth of the matters asserted therein.
The appellant contends further that the following findings in the order are wholly lacking in record support:
6.I find that Claimant was urged by his supervisor to come in on 1/2/93, but he claimed that he was too nervous to report to work....
[[Image here]]
10. I find that on 1/6/93, after refusing to return to work at light duty, Claimant was warned by letter that his absences were considered unexeused, and that the Employer would take disciplinary action if Claimant failed to heed the warning. I find the warning to be in accordance with the Employer’s standard policy, as stated by Doug Wampole and George Bushn, whose testimony I accept.
11. I find that on 1/7/93, Claimant failed to attend physical scheduled therapy (sic) because he claimed to not have transportation. He was told by the Employer to take a cab to therapy, but he did not comply. *1351 He later advised the Employer that he would not be attending therapy in Bartow or Lakeland....
[[Image here]]
IB. I find that on 1/11/93, ... Claimant went to Lakeland Regional Medical Center emergency room, with complaints and history consistent with prior accounts, except that he told an emergency room nurse, as documented in medical records, that he recently fell in his bathtub re-injuring his back.
14. I find that on 1/15/93, Claimant reported for work and was observed walking normally from the parking lot until he was about 20 feet from the door, at which time he began walking bent over and more slowly. Claimant’s next scheduled work day was 1/19/93.... He told his foreman he had contacted Dr. Cherry, but he needed the Employer’s approval before Dr. Cherry would see him. The Employer denied the authorization to see Dr. Cherry and scheduled an appointment for Claimant to see Dr. Sweeney that day, but Claimant did not go to the doctor’s office after he left work. He later told the Employer that he wouldn’t see Dr. Sweeney, but would see his own doctor, whom he wouldn’t identify....
[[Image here]]
16. I find that on 1/21/93, the Employer sent a letter to Claimant explaining that only Watson Clinic Bartow and Dr. Melton were authorized, and that all other health care providers were not authorized, and would have to be paid by Claimant and/or group health insurance. Claimant was urged to follow the instructions given by Dr. Melton regarding physical therapy and restricted work duties....
17. Dr. Merritt told the Employer that he would stand behind the disability slip information even though he hadn’t seen Claimant recently....
18. The Employer/Carrier denied Claimant’s temporary partial benefits requests for the period of time from 12/26/93 (sic) through 2/5/93 on the basis of voluntary limitation of income, as light duty has been available to Claimant at all times as approved by Dr. Sweeney and Dr. Melton,
[[Image here]]
25. Claimant claimed ... to have seen a specialist in Detroit named Dr. Smith. Claimant would not be more specific at the time of the deposition; however, he did agree to provide this doctor’s full name and address to his attorney who in turn will forward it to the Employer/Carrier prior to mediation. Claimant never accomplished this....
[[Image here]]
27. [Claimant] further stated that he spent most days drinking alcohol, and taking illicit pills which he .purchased off the street....
Our review of the record reveals that the order either mischaraeterizes the evidence or recites facts for which there is no competent record support. For example, there is no evidence that claimant “fell in his bathtub reinjuring his back.” Nor is there any evidence of a fall in the bathtub; the emergency room nurse’s notes indicate merely that claimant reinjured his back “while trying to bathe.” Moreover, the defense of an intervening act was not raised below, making the pertinence of this finding somewhat tenuous at best. Counsel for appellees has, additionally, failed to direct this court to specific record citations to support the challenged findings.
Finding no competent evidence to support these findings, we reverse the ultimate conclusion that appellant suffered no permanent impairment. On remand, if the JCC should determine once again that appellant suffered no permanent impairment causally related to a compensable injury, any such determination must be justified by specific findings, based on competent and substantial evidence. As discussed above, the document prepared by the employer’s safety director should not be considered as competent evidence of the facts recited therein. The denial of wage-loss benefits and the findings concerning that portion of the claim alleging a psychiatric injury, being dependent upon a predicate physical injury, are likewise vacated.
*1352 One final issue warrants discussion. The appellant has urged that Dr. Melton, an orthopedic surgeon, was not competent to testify concerning the reasonableness and medical necessity of chiropractic treatment. The supreme court has expressly rejected the argument that appellant seeks to advance. See Clair v. Glades County Board of Commissioners, 649 So.2d 224 (Fla.1995). Physicians are not precluded from testifying concerning a treatment outside the physician’s peer group, upon a showing of sufficient competence to opine concerning the reasonableness and medical necessity of a particular treatment. Clair, 649 So.2d at 225. The competence of an expert to testify is a matter within the JCC’s discretion and we find no abuse of that discretion on this record. On remand, therefore, the JCC is free to consider Dr. Melton’s opinion regarding the reasonableness and medical necessity of chiropractic treatment.
AFFIRMED in part, REVERSED in part and REMANDED for further proceedings.
BARFIELD, C.J., and ERVIN, J., concur.
KAHN, J., concurs and dissents with opinion