# LORRAINE HAYNES v. DAROLD A. ANDERSON.

232 N. W. 2d 196.

May 23, 1975—No. 45637.

*Ogurak & Striker, Melvin Ogurak,* and *Leland W. Kampinen,* for petitioner.

*Clarence E. Hagglund* and *Robert M. Pearson,* for respondent.

Heard at Special Term by Kelly, Todd, and Scott, JJ., and considered and decided by the court en banc.

SHERAN, CHIEF JUSTICE.

Petition for writ of prohibition to restrain the district court from enforcing its order that plaintiff submit to the Minnesota Multiphasic Personality Inventory as part of the independent adverse medical examination in this personal injury action. We issued an alternative writ. Writ discharged and case remanded for further proceedings consistent with opinion.

The underlying action arises out of an April 1971 automobile collision. Plaintiff commenced this action in December 1971, alleging that as a direct result of the accident she "was caused to suffer great pain and sustain, among other injuries, severe and permanent injuries to her head, neck, lower back and spine, legs, and other areas." While denying causal negligence on his part, defendant answered that he was without sufficient information to form a belief as to the truth or falsity of the alleged injuries sustained by the plaintiff.

Based on the scant record before us, these facts are pertinent:

According to plaintiff's complaint, defendant's vehicle struck the rear of plaintiff's vehicle, inflicting about $160 of property damage. Plaintiff claims to have incurred severe injuries. The day after the accident, plaintiff complained to a doctor of headaches and pain in her back, neck, and shoulder. She was diagnosed as suffering from a myofascial injury of the neck and a protruding lumbar disc and received treatment.

In June 1971, plaintiff was hospitalized for 17 days and received physical therapy for her neck and back condition. The diagnosis at that time was "myofascial injury of neck" and "lumbar discognetic syndrome." Plaintiff continued to receive therapy on an outpatient basis. Plaintiff's doctor discharged her from treatment in October 1971, noting that she had made a good recovery, but that her injuries were permanent and that she suffered from a permanent partial disability of her back. Plaintiff apparently last saw her doctor about her condition in December 1971.

Plaintiff's April 1973 discovery deposition revealed that she

suffered from daily headaches, accompanied by neck pain, for which she takes a nonprescription pain reliever, daily pain in her right thigh, pain in her right arm occurring several times a week, almost constant throbbing in her shoulder, and a periodic "catch" in her back. Discovery also revealed that plaintiff claims special damages of approximately $4,500 for medical expenses and wage loss.

In early May of 1974, plaintiff, pursuant to an agreement of counsel, submitted to an adverse medical examination performed by Andrew J. Leemhuis, M. D. He concluded that the physical examination was "normal for any abnormality as a result of this accident" and characterized plaintiff's residual symptoms as "on a tension or functional basis," predicting that they would disappear when the litigation was settled.

Dr. Leemhuis attempted to administer the Minnesota Multiphasic Personality Inventory (hereinafter MMPI) to plaintiff during the examination. Acting upon the advice of counsel, plaintiff refused to submit to it. Defendant moved the trial court, under Rule 35.01 of the Rules of Civil Procedure, for an order compelling plaintiff to undergo the MMPI. Plaintiff contends that the trial court abused its discretion in issuing the order.

At issue is the meaning of Rule 35.01 as applied. The rule provides:

"*In an action in which the mental or physical condition* or the blood relationship *of a party,* or of an agent of a party, or of a person under control of a party, *is in controversy, the court* in which the action is pending *may order* the party to submit to, or produce such agent or person for *a mental or physical or blood examination by* a physician. *The order may be made only on motion for good cause shown* and upon notice to the party or person to be examined and to all other parties *and shall specify the time, place, manner, conditions, and scope of the examination* and the person or persons by whom it is made." (Italics supplied.)

Plaintiff argues that neither the "in controversy" nor the "good cause" requirements of the rule have been met.

1. The trial court is vested with much discretion in ordering a physical or mental examination. Hill v. Hietala, 268 Minn. 296, 128 N. W. 2d 745 (1964). We also recognize that mere conclusory allegations of the pleadings are insufficient to satisfy the "in controversy" and "good cause" requirements of Rule 35.01. The moving party must affirmatively show that the condition as to which examination is sought is really and genuinely in controversy and that good cause exists for the particular examination in question. Schlagenhauf v. Holder, 379 U. S. 104, 85 S. Ct. 234, 13 L. ed. 2d 152 (1964).

Plaintiff argues that by asserting physical injuries in her complaint she placed only her physical and not her mental condition in controversy. To place such a restrictive interpretation upon Rule 35.01 would, in our view, substantially undermine its usefulness. The rule does not require that the party to be examined place his or her condition in controversy, but only that the condition be in controversy.[1]

We are convinced by materials placed before the trial court at the hearing on the discovery motion that defendant harbors genuine doubts, based upon the opinion of the examining physician, as to whether the plaintiff's present symptoms are mental or physical in origin. In other words, defendant argues that the cause of plaintiff's symptomatology is in controversy. The ultimate question is whether plaintiff's condition is physical or mental. Therefore, both her physical and mental condition are "in controversy" within the meaning of Rule 35.01.[2]

---

[1] Plaintiff's reliance on Roberts v. Superior Court of Butte County, 9 Cal. 3d 330, 107 Cal. Rptr. 309, 508 P. 2d 309 (1973), is misplaced, for, unlike the instant matter, the court there construed a rule of procedure which provided that the medical privilege would be waived only where the patient placed his or her own physical condition in issue. Thus, on facts quite similar to those in the case at bar, the defendant was not entitled to discover records of plaintiff's history of psychiatric disorders, as the plaintiff had not placed her own mental condition in issue.

[2] Cf. Buck v. Board of Education of City of New York, 17 F. R. Serv. 2d 165 (E. D. N. Y. 1973).

2. The nature and extent of the showing that must be made to demonstrate "good cause" under the rule differs from case to case, turning largely upon the nature of the examination sought. See, Schlagenhauf v. Holder, *supra*. What constitutes "good cause" where the examination sought is the Minnesota Multiphasic Personality Inventory or a similar examination is a question of first impression.

The nature of the MMPI is described in Lawyers' Medical Cyclopedia at § 21.16:

"The Minnesota Multiphasic Personality Inventory (MMPI) is probably * * * the most widely used of the personality inventories. This test consists of a series of statements (566 in all) such as 'I am bothered by acid stomach several times a week,' 'I believe I am being plotted against,' 'I have very few quarrels with members of my family,' and 'Any man who is able and willing to work has a good chance of succeeding.' These statements cover a wide range of attitudes and feelings, and the subject is asked to indicate whether these are *True, False,* or whether he is unable to say, in regard to their applicability to himself.

"* * * In addition to ten clinical scales which give the range of feelings dealing with such areas as body symptomatology, interpersonal relations, feeling of depression, social withdrawal, aggressive feelings, and interests, there are four validity scales from which it is possible to tell whether the person is overly defensive in taking the test, is trying to look better or worse than he may actually be, is attempting to present a good, overly moral picture, or has marked indecision in answering."

While many of the questions included in the MMPI are of an intimate and personal nature, dealing with sexual, moral, and religious attitudes and conduct, such questions are asked not for the purpose of obtaining factual information about the subject's experiences and beliefs, but rather to measure the subject's psychological traits. See, Slovenko, Psychotherapy, Confidentiality & Privileged Communication, p. 79, Note 18. Nevertheless, revelation of the plaintiff's answers to specific questions would

undoubtedly prove embarrassing and even damaging to the plaintiff.[3] Because a party is more likely to suffer injury from an untoward invasion of privacy where a psychological rather than a physical examination is sought, courts have protected party-patients' interests by surrounding psychological tests with procedural safeguards. See, Roberts v. Superior Court of Butte County, 9 Cal. 3d 330, 107 Cal. Rptr. 309, 508 P. 2d 309 (1973); Kelly v. Smith & Oby Co. 70 Ohio L. Abs. 554, 129 N. E. 2d 106 (Ct. of Common Pleas, Cuyahoga County, 1954).

In our judgment, submission to the MMPI should not be required in this case unless the trial court is satisfied:

(1) That the answers to the questions will not be used to embarrass or intimidate the examinee;

(2) That the need for the examination and the anticipated probative value of the evaluation of the answers given outweigh any unnecessary intrusion on the examinee's privacy;

(3) That the evaluation of the results of the test will be privileged except to the extent that disclosure is made necessary by the progress of the litigation.

(4) That answers to each of the questions submitted to the person examined are necessary to make the test useful to the examining physician; otherwise, answers to nonessential questions should not be required.

Because the attorneys and the trial judge did not have the benefit of these guidelines when the challenged order was requested and made, we vacate the order of the district court and remand the matter to the district court for further proceedings consistent with this opinion. Upon renewed application for an order directing submission to the test, defendant must persuade

---

[3] Our understanding of the MMPI is that there is seldom if ever a clinical justification for revealing the raw data. The usual practice is to convert such data into a "personality profile" by scoring the specific responses on the various abstract scales. See, Lawyers' Medical Cyclopedia, § 21.16.

the trial court that the four conditions above set out will be satisfied.

Writ discharged; order for test vacated; and case remanded for further proceedings consistent with opinion.