Todd A. FISHER, Plaintiff and Appellee,

v.

Dale Lyle JOHNSON, Defendant,

and

Rodger D. JOHNSON, individually and as personal representative of the Estate of Dale Lyle Johnson, deceased, Defendant, Third Party Plaintiff and Appellant,

v.

Keith LINDENBERG and Denton Offutt, Third Party Defendants.

Civ. No. 920254.

Supreme Court of North Dakota.

Nov. 10, 1993.

Hodny, Currie, Petersen & Martens, Grafton, for plaintiff and appellee; argued by Sharon W. Martens.

Pearson, Christensen, Larivee and Fischer, Grand Forks, for defendant, third party plaintiff and appellant; argued by Jon J. Jensen. Appearance by Rodger D. Johnson.

NEUMANN, Justice.

Rodger D. Johnson appealed from the judgment entered in an action brought by Todd A. Fisher to recover damages arising out of a beating inflicted upon him by Johnson and from an order denying Johnson's motion for new trial. We affirm.

Rodger, Fisher, and a number of others were involved in an altercation at a bar in Grafton on March 5, 1988. Rodger received a cut under his right eye and required medical attention.

Early on March 27, 1988, Rodger and his brother, Dale Johnson, waited outside Fisher's home. Fisher was dropped off by a friend. As Fisher was walking toward his home, Dale and Rodger approached him and Rodger asked if he was Todd Fisher. Fisher was beaten by Rodger. Fisher was trans-

ported by ambulance to a hospital, where he was treated from 1:33 a.m. to 3:25 a.m.

Fisher sued Dale and Rodger for compensatory and exemplary damages. Rodger answered and counterclaimed for damages allegedly resulting from the March 5 incident. Dale answered separately.[1] Rodger also filed a third-party complaint against Keith Lindenberg and Denton Offutt, alleging that in the March 5 incident, Lindenberg held him while he was repeatedly struck by Fisher and Offutt. Lindenberg and Offutt filed an answer denying the allegations in the third-party complaint.

After a four-day trial, the jury returned a special verdict finding that Rodger was 100% at fault for the injuries suffered by Fisher on March 27, 1988, and that Dale and Fisher were not at fault. The jury awarded Fisher past economic damages of $1,725.30, no future economic damages, non-economic damages of $15,000 and punitive damages of $30,000. The jury also found that Fisher, Lindenberg and Offutt were not at fault for causing Rodger damages in the March 5 incident.

Judgment was entered in favor of Fisher for $52,494.72, including interest, costs and disbursements. Lindenberg and Offutt were each awarded costs and disbursements of $450.85. The trial court denied Rodger's motion for a new trial, and Rodger appealed from the judgment and from the order denying his motion for new trial.

On appeal, Rodger argues that the exemplary damages awarded were excessive, that the trial court erred in denying his motion to bifurcate the issue of exemplary damages from the issues of liability and compensatory damages, and that the trial court erred in denying him an opportunity to challenge the expert opinion of Fisher's clinical psychologist or to impeach Fisher's credibility by cross-examining him about his responses to three statements in a Minnesota Multiphasic Personality Inventory (MMPI)[2] he completed.

---

1. Dale Johnson died before trial.

2. The MMPI "consists of a series of statements (566 in all) ... cover[ing] a wide range of atti-

tudes and feelings, and the subject is asked to indicate whether these are *True, False,* or whether he is unable to say, in regard to their applica-

In his motion for a new trial, Rodger asserted only the trial court's refusal to allow cross-examination about Fisher's responses to three statements in the MMPI he completed as grounds for a new trial; he did not raise the exemplary damages and bifurcation issues as grounds for a new trial. We said in *Andrews v. O'Hearn*, 387 N.W.2d 716, 728 (N.D.1986):

> " 'It is well settled that where a motion for a new trial is made in the lower court the party making such a motion is limited on appeal to a review of the grounds presented to the trial court.' *Zimbelman v. Lah*, 61 N.D. 65, 67, 237 N.W. 207, 208 (1931). This restriction of appealable issues applies not only to review of a denial of the motion for a new trial, but also to the review of the appeal from the judgment itself or from a denial of a motion for judgment notwithstanding the verdict. . . . "

Because Rodger filed a motion for a new trial and did not raise issues about exemplary damages and bifurcation as grounds for a new trial, appellate review of those issues is foreclosed. Thus, the only issues preserved for our review are whether or not the trial court erred in denying Rodger an opportunity to challenge the conclusion of Fisher's clinical psychologist or to impeach Fisher's credibility by cross-examining him about his responses to three statements in the MMPI.[3]

Sharon Hagen, a clinical psychologist, met with Fisher twice in 1991. She conducted a one-hour clinical interview, administered the MMPI to Fisher, and conducted another one-hour clinical interview. She diagnosed Fisher as having post-traumatic stress disorder. Hagen testified that her "opinion is based primarily on my clinical interview. The M.M.P.I. I used to substantiate what I found in the clinical interview."

Rodger's attorney sought to have Hagen read Fisher's responses to the following statements in the MMPI: No. 41—"I do not always tell the truth."; No. 134—"At times I feel like picking a fist fight with someone."; and No. 150—"Sometimes I feel as if I must either injure myself or someone else." Fisher responded in the affirmative to all three statements in the MMPI. The trial court refused to allow Rodger's attorney to ask Hagen about Fisher's responses to those three MMPI statements:

> "Second, I believe it's using extrinsic evidence to address truthfulness and while there is some latitude in the rules of evidence and perhaps some discretion for the court to address, this does not appear to be one. Therefore, I'm going to deny the request to ask individual questions.

> \*   \*   \*   \*   \*   \*

> "You've made your point. I'm not going to change my ruling despite your statements. I believe he was answering those for a different purpose. He had not been instructed he could not answer those. Those questions have to be answered true or false. He has no choice to explain. It was done for a different purpose. My ruling stands."

When Rodger's attorney later sought to cross-examine Fisher about his responses to MMPI statements No. 41, No. 134, and No. 150, the trial court again refused to allow use of the individual statements:

> "Okay. To add to my earlier ruling, I'm going to deny the asking of those three

---

bility to himself." 3A *Lawyers' Medical Cyclopedia*, § 21.16 (3d ed. 1983). "While many of the questions included in the MMPI are of an intimate and personal nature, dealing with sexual, moral, and religious attitudes and conduct, such questions are asked not for the purpose of obtaining factual information about the subject's experiences and beliefs, but rather to measure the subject's psychological traits." *Haynes v. Anderson*, 304 Minn. 185, 232 N.W.2d 196, 199–200 (1975). The MMPI has "ten clinical scales which give the range of feelings dealing with such areas as body symptomatology, interpersonal relations, feelings of depression, social withdrawal, aggressive feelings, and interests." 3A

*Lawyers' Medical Cyclopedia*, § 21.16 (3d ed. 1983). It also has "four validity scales from which it is possible to tell whether the person is overly defensive in taking the test, is trying to look better or worse than he may actually be, is attempting to present a good, overly moral picture, or has marked indecision in answering." *Id.*

3. At no point in these proceedings has Rodger argued that Fisher's responses to the MMPI questions should have been received as substantive evidence of Fisher's propensity to violence under Rule 801(d)(2), N.D.R.Ev.

questions. I think the truthfulness scale question was asked by plaintiff's counsel, but, Mr. Larivee, you had the chance to discuss and ask all the questions you wanted of Dr. Hagen about that. You had the chance to impeach her or to discredit her opinion and in fact numerous questions were asked about that. It was self-reporting by Mr. Fisher that she based her analyses upon. As I said earlier that is a questionnaire in which he was told he had to answer questions by her. He had no real choice in that if he was going to be considered cooperating in the testing. Two of the questions have to do with feelings. They do not have to do with actions; No. 134 and 150. I believe it would be unduly prejudicial to pick out one or two of questions and address them to that plaintiff. I'm going to deny your request and we will proceed on."

In its order denying Rodger's motion for a new trial, the trial court said that it "balanced the different interests and concluded that the questions and answers were not of sufficient probative value as to Plaintiff's motives and truthfulness to offset the undue prejudice to the Plaintiff which would occur if deemed admissible."

Attempts to use MMPI responses have been limited and results mixed. In *State v. Martini*, 131 N.J. 176, 619 A.2d 1208, 1251 (1993), a prosecutor's use of selected MMPI questions was upheld where the defendant's expert said that the defendant's MMPI showed that defendant was "faking bad" and later changed his mind and said that the defendant "was not faking good or bad." In *Mason v. Ditzel*, 255 Mont. 364, 842 P.2d 707, 714 (1992), the court said that disputed MMPI testimony "tended to confuse the issues and may have misled the jury."

■ Evidence of Fisher's responses to individual statements in the MMPI may be admissible under Rule 705, N.D.R.Ev., which provides that an expert may be required to disclose underlying facts or data on cross-examination. However, "the expert must in fact have relied upon it." 3 *Weinstein's Evidence* ¶ 705[01], p. 705–11 (1993). Here, Hagen did not rely on Fisher's responses to individual statements in the MMPI. Hagen

testified on the relative unimportance of individual responses: "[T]he various scales on the M.M.P.I. are not based on particularly the way one or two questions are answered.... And so what we look for is the pattern of responses overall rather than the way a person may have answered a few questions." Hagen testified that "the way a person answered one of those items would not have a significant impact on the way the test was interpreted." In the absence of evidence that Fisher's expert relied on the individual answers which Rodger sought to introduce, it was not an abuse of the trial court's discretion to exclude them.

■ Rodger also argues that Fisher's responses to the three MMPI questions were prior inconsistent statements admissible for the purpose of impeachment. Rule 613, N.D.R.Ev. Prior inconsistent statements, especially ones made by a party-witness which may have gone to an issue in the trial, are probably the most effective and most frequently used of all forms of impeachment, and generally should be admitted. *See, generally,* McCormick, *Evidence* § 33 (4th Ed. 1992). However, they are still subject to Rule 403, N.D.R.Ev., and may be excluded if their probative value is substantially outweighed by a danger of unfair· prejudice, confusion or misleading, and even by considerations of undue delay, waste of time or cumulative evidence. "Rule 403 casts a broad shadow.... All otherwise admissible evidence is subject to the Rule 403 balance, unless another rule provides expressly to the contrary." Joseph and Saltzburg, *Evidence in America* § 13.3 at 9 (1992).

Rule 403 "vests wide discretion in the trial court to control the introduction of evidence at trial and our review is limited to determining whether that discretion was abused." *First Nat'l Bank & Trust Co. v. Brakken*, 468 N.W.2d 633, 636 (N.D.1991). "A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner." *Id.* "Rule 403 is an explicit grant of discretion to the trial judge" and "rests on the assumption that a degree of trial court discretion is desirable as well as inevitable." 22 C. Wright and K. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5212

(1978). "This positive view of discretion rests upon the desire for individualized justice, for rulings that respect the uniqueness of each situation. It emphasizes judicial creativity and the need for choice where rules cannot account for all of the relevant factors." *Id.*

"The delicate balancing required by" Rule 403, N.D.R.Ev., in determining if relevant evidence should be excluded because its probative value is outweighed by the danger of unfair prejudice, "taking into account the state of the evidence and pleadings at the time the evidence is offered, makes this a determination especially suited to the discretion of the trial court." *Slaubaugh v. Slaubaugh*, 466 N.W.2d 573, 579 (N.D.1991). In exercising its discretion in admitting or excluding evidence under Rule 403, N.D.R.Ev., the trial court must "assess the dynamics of the trial" and "weigh the competing factors." *Id.* Broad discretion is accorded to trial courts in balancing probative value against prejudice because "trial judges are much closer to the pulse of a trial than we can ever be" [*United States v. Juarez*, 561 F.2d 65, 71 (7th Cir.1977)] and "are better able to sense the dynamics of a trial than we can ever be" [*Longenecker v. General Motors Corp.*, 594 F.2d 1283, 1286 (9th Cir.1979)].

In the present case, Fisher had made no statement relating to his truthfulness, his propensity to pick fights or his inclination to injure himself or someone else, until those questions were asked on cross-examination by Rodger's counsel. By this time, Rodger's counsel had been told on numerous occasions that he would not be permitted to introduce Fisher's MMPI answers. He nevertheless asked the questions with full knowledge of the court's rulings. The court had already heard the psychologist's testimony about the meaningless nature of individual MMPI responses. In this context the trial court may well have considered the probative value of

the MMPI answers minimal, compared with their potential to mislead the jury.[4]

The trial court carefully weighed the probative value of the evidence against its potential to mislead the jury as to the meaning and significance of Fisher's responses, which were given in the highly constricted and specialized context of the MMPI. The trial court was in a better position to assess the impact on the jury of admitting into evidence Fisher's responses to the three individual MMPI statements than is this court reviewing a cold record. From our review of the record, we are unable to conclude that the trial court acted in an arbitrary, unreasonable, or unconscionable manner in refusing to admit Fisher's responses to the three MMPI statements. The trial court did not abuse its discretion.

Affirmed.

VANDE WALLE, C.J., and LEVINE and SANDSTROM, JJ.

MESCHKE, Justice, concurring and dissenting.

I view the record differently than the majority, and I believe that Evidence Rule 403 was misapplied. Although I conclude that cross-examination of Fisher was improperly restricted, I join in affirming that part of the judgment allowing Fisher damages and punitive damages on his claim because the error was harmless to that extent. Because the restriction of cross-examination of Fisher most substantially impacted Roger Johnson's counterclaim, I respectfully dissent. I would reverse the judgment insofar as it dismisses Johnson's counterclaim, and remand the counterclaim only for a separate and new trial.

Dr. Sharon Hagen, a clinical psychologist, testified for Fisher that he suffered post-traumatic stress from the beating by Johnson. After describing in detail the Minnesota Multiphasic Personality Inventory test

---

4. If Rodger's attempt to introduce the three MMPI responses was intended to impeach Fisher's testimony that he did not initiate the March 27, 1988, fight that resulted in his beating, such a contention is severely undercut by other evidence. The evidence showed that when Fisher was dropped off at his home by a friend shortly·

before 1:30 a.m., he was accosted by Rodger and his brother, who had been lying in wait under cover of darkness for Fisher's arrival. The evidence also showed that Fisher was in a very intoxicated state, but that Rodger and his brother had not been drinking.

that she gave Fisher, along with interviewing him, she was asked

Q  Do you have an opinion based on a reasonable degree of psychological certainty whether or not Todd Fisher suffered any psychological effects from the beating?

. . . .

A  Yes.

When she was asked to state that opinion, the trial court sustained an objection to foundation. Led by Fisher's counsel, Dr. Hagen then testified that she "scored" the M.M.P.I., explained that, "after the scoring is completed, then we look at the report overall and make an interpretation of what's reflected in the report or in the scales," and that she used it with other materials and her interview to reach an opinion on "whether or not Mr. Fisher suffered any psychological effects from the beating." Dr. Hagen opined that she "diagnosed Mr. Fisher at that time with the post-traumatic stress disorder." Her written report on Fisher's psychological condition was then marked, offered, and received as an exhibit.

Dr. Hagen's written report states that her "evaluation [was] based on" the "Minnesota Multiphasic Personality Inventory–2," along with her interview, depositions, the complaint, and other material. Her report used the M.M.P.I.:

On the MMPI–2, Mr. Fisher gives a valid MMPI profile being honest with a balance between being self protective and self disclosing. . . . The profile is similar to one experiencing symptoms of post-traumatic stress disorder. . . . The remaining symptoms, clinical presentation and MMPI findings are all consistent with one who has lingering symptoms of post-traumatic stress disorder.

Her opinion thus relied on the M.M.P.I. profile.

During cross-examination, Dr. Hagen testified:

The opinion is based primarily on my clinical interview. The M.M.P.I. I used to substantiate what I found in the clinical interview.

After the trial court ruled that Johnson's attorney could not cross-examine her by "pick[ing] out individual questions [from the M.M.P.I.] and responses to those," Fisher's counsel asked Dr. Hagen on redirect:

Q  And did Mr. Fisher pass the honesty examination in this M.M.P.I.?

A  Yes.

When Johnson's counsel renewed his effort to inquire of Dr. Hagen about Fisher's answers to a few specific M.M.P.I. questions, on grounds "[t]hey opened that up," the trial court still refused to allow that inquiry.

Later, while cross-examining Fisher, counsel for Johnson renewed his offer of proof to ask about three particularly relevant questions answered by Fisher in the M.M.P.I. test:

Q41:  I do not always tell the truth.

A  True.

Q134:  At times I feel like picking a fistfight with someone.

A  True.

Q150:  Sometimes I feel as if I must injure either myself or someone else.

A  Affirmative.

Despite recognizing that "the truthfulness scale question was asked by plaintiff's counsel, . . ." the court still restricted cross-examination. *See* NDREv 106: An adverse party may require introduction of any other part of a statement introduced "which in fairness ought to be considered contemporaneously with it."

The court reasoned:

It was self-reporting by Mr. Fisher that she based her analyses upon. As I said earlier that is a questionnaire in which he was told he had to answer questions by her. He had no real choice in that if he was going to be considered cooperating in the testing. Two of the questions have to do with feelings. They do not have to do with actions; No. 134 and 150. I believe it would be unduly prejudicial to pick out one or two of questions and address them to that plaintiff. I'm going to deny your request and we will proceed on.

Later, Johnson's counsel asked Fisher: "Do you always tell the truth?" Fisher replied, "To the best of my knowledge, yes."

Q  My question is do you always tell the truth?

A  I try to.

Q  Sometimes you don't then is that what you're saying?

A  On occasion I may slip.

Q  Okay. At times do you feel like picking fights with someone else?

A  Not that I know of, no.

Q  Didn't you tell or answer a question in this test that you did?

MR. PETERSON: Objection, Your Honor.

THE COURT: Sustained.

MR. PETERSON: I'd ask that that answer be stricken, the question I should say.

THE COURT: The jury is asked to disregard the question.

Q  (By Mr. Larivee) Mr. Fisher, do you at times feel that you must injure yourself or someone else?

A  Excuse me.

Q  My question was do you sometimes feel that you must injure yourself or someone else?

MR. PETERSON: I renew our objection, Your Honor.

THE COURT: Overruled. You may answer the question.

A  Will you say that again please.

Q  Yes. Do you sometimes feel that you must injure either yourself or someone else?

A  No.

Q  You don't?

A  Nope.

Q  And didn't you tell Dr. Hagen just the opposite?

MR. PETERSON: Objection.

THE COURT: Sustained. The jury disregard the question.

MR. LARIVEE: Thank you. I have no further questions.

In my view, the trial court overly restricted cross-examination by misapplying Evidence Rule 403:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The Explanatory Note to NDREv 403 says:

The rule vests wide discretion in the trial court to control the introduction of evidence.

Still, the rule should be evenhandedly applied. The judicial thumb should not tilt the scales. I believe that the rule was misapplied in this case.

The Notes of the Advisory Committee to the identical federal rule are instructive:

The case law recognizes that certain circumstances call for the exclusion of evidence which is of unquestioned relevance. These circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme. Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission.... The rules which follow in this Article are concrete applications evolved for particular situations. However, they reflect the policies underlying the present rule, which is designed as a guide for the handling of situations for which no specific rules have been formulated.

... "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.

....

In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction. See Rule 106 [now 105] and Advisory Committee's Note thereun-

der. The availability of other means of proof may also be an appropriate factor. Fed.R.Evid. 403 advisory committee's note (citations omitted). The rule allows evidence to be excluded only when its "probative value" is *substantially outweighed* by "the danger of unfair prejudice" or another irrational factor.

Fisher's written statements about his credibility and disposition were very relevant to Johnson's counterclaim. *See State v. McIntyre*, 488 N.W.2d 612, 617 (N.D.1992) ("The fact that the proffered evidence of [witness's] prior use of excessive force is disputed goes to the weight of that evidence, not its admissibility."). This relevancy is well explained by a scholarly summary of the reasons why an admission by a party-opponent is not hearsay under NDREv 801(d)(2):

> The principle that a party should not be permitted to claim the protection of the hearsay doctrine when his own statement is offered against him is a logical expression of the philosophy of the adversary system: Given that a party bears the lion's share of responsibility for making or breaking his own case, it is reasonable to conclude that he is in no position to claim that his own statement should be excluded because not made under oath, subject to cross-examination, under circumstances enabling the trier of fact to observe demeanor. Perhaps equally important is the fact that the party himself is present and has ample opportunity to explain, deny, or rebut the statement attributed to him. Again the philosophy of the adversary system implies the judgment that it is fair to put a party at risk that the trier will accord full evidential force to his own statement unless he comes forward with some kind of counterproof....

4 David W. Louisell & Christopher B. Mueller, Federal Evidence § 423 (1980). In this case, the excluded statements were part of Fisher's communications with an expert for evidentiary purposes in this trial, not some remote or unrelated event. Fisher's statements were made to evidence his mental and emotional condition for this case alone. *Compare* NDREv 503(d)(3) ("There is no [physician-patient] privilege under this rule

as to a communication relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense....").

"The authority of the trial judge under Rule 403 is extensive but not boundless," and "the power to exclude evidence ... should be sparingly exercised." 2 Louisell & Mueller, Federal Evidence § 125 at 18 (1985). Our rules, like the federal rules, favor admissibility, and exclusion of evidence is a drastic remedy. *See* 1 Wigmore, Evidence § 10a at 680 (Tillers rev. 1983). In this light, and as urged in 1 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 403[03] at 403–51 (1993), the trial court should "give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."

The committee notes to Federal Rule 403 identify an "unfair prejudice" as an "undue tendency to suggest decision on an improper basis." Unlike the reasons that specifically authorize exclusion in the detailed rules following Rule 403, the ones on character evidence (Rules 404 and 405), habit (Rule 406), subsequent remedial measures (Rule 407), offers and compromises (Rules 408, 409, and 410), and insurance (Rule 411), there is no possible unfairness present here. After viewing Fisher's individual test answers in their most probative and least prejudicial light, there is no reason to visualize any prejudice to Fisher as unfair.

Rather, admissibility of these few test answers is consistent with the specific rules that come after NDREv 403. Evidence of other acts is admissible to prove motive, opportunity, and intent. NDREv 404(b). In cases where character or a trait of character of a party is an element of a claim or defense, as here, proof of specific instances of the person's conduct is admissible. NDREv 405(b). *See also* NDREv 608(b) ("in the discretion of the court, if probative of truthfulness or untruthfulness, [specific instances of the conduct of a witness] may be inquired into on cross-examination of the witness ... concerning the witness' character for truthfulness or untruthfulness...."). I see nothing implicitly unfair in admitting a party's

own pronouncements about his credibility and disposition.

"Unfair prejudice" means something more than an adverse implication to a party.

"Of course," as the Fifth Circuit has remarked, " 'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudical or it isn't material. The prejudice must be 'unfair.' " The Committee's Note explains that "unfair prejudice" means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Evidence that appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action may cause a jury to base its decision on something other than the established propositions in the case. The appellate court may conclude that "unfair prejudice" occurred because an insufficient effort was made below to avoid the dangers of prejudice, or because the theory on which the evidence was offered was designed to elicit a response from the jurors not justified by the evidence. Rules 407 through 410 are to some degree based on the assumption that certain evidence is inherently prejudicial and must be excluded.

1 Weinstein's Evidence § 403[03] (footnotes omitted). Prejudice to Fisher, in the unfair sense contemplated by Evidence Rule 403, is not evident here to me.

In order for this error to warrant a reversal and new trial, the error must affect a substantial right. NDRCivP 61; NDREv 103. In light of all the evidence, I largely agree with the majority's comment in footnote four. The evidence of Johnson's shameful attack on Fisher on March 27 and of Fisher's damages is strong, and not seriously affected by this mistaken restriction on cross-examining Fisher. I believe that the exclusion of Fisher's test answers was harmless error as to Fisher's claim.

Still, the exclusion of these responses certainly affected Johnson's substantial rights on his counterclaim for the March 5 incident when Johnson was beaten. *Filloon v. Sten-*

*seth,* 498 N.W.2d 353, 356 (N.D.1993) (reversing for a new trial when trial court restricted cross-examination about a witness's employment by improperly weighing the probative value of potential bias under NDREv 403 and 411); *Roshan v. Fard,* 705 F.2d 102 (4th Cir.1983) (reversing for new trial when defendant in civil battery case was prevented by a 403 ruling from cross-examining plaintiff about their relationship prior to the fight and about plaintiff's conviction of a crime caused by defendant's role as a drug informant). Therefore, I would reverse and remand Johnson's counterclaim for a new and separate trial, while affirming Fisher's judgment for damages from the March 27 beating.