PER CURIAM.
The defendant, whom the circuit court found to be incompetent, petitions for a writ of certiorari. She seeks to quash the court’s order directing her “to submit to a risk assessment evaluation conducted by the expert retained by the State of Florida for such evaluation.” She argues that the order departs from the essential requirements of law because: (1) no statute or rule authorizes a “risk assessment evaluation” of a defendant adjudicated incompetent; and (2) the order requires her to be examined by a state-retained expert instead of a court-appointed expert on a competency-related issue. We agree in part with the first argument, and agree in full with the second argument. Thus, we grant the petition.
The state charged the defendant with two counts of strong-arm robbery for two purse snatchings. In one of the incidents, the probable cause affidavit alleged that the defendant punched the victim in the jaw. The circuit court initially found the defendant was incompetent to proceed. Two years later, the court found the defendant had been restored to competency. The defendant then pled guilty to both charges. The court placed the defendant on probation for seven years.
Two years into the probationary period, the court again found that the defendant was incompetent to proceed. The court directed that the defendant be placed at a group home while receiving treatment to be restored to competency.
Four months into the defendant’s stay at the group home, she allegedly pushed a pregnant resident to the ground. The state charged the defendant with aggravated battery on a pregnant woman and alleged that the incident violated the defendant’s probation.
When the aggravated battery case came before the court for review, the court found that the defendant was incompetent to proceed in that case as well. In making that finding, the court stated that it may have to re-evaluate the defendant’s placement given that “the criteria is harm to herself or others.” The prosecutor responded, “I’ll do a risk assessment as well.” Defense counsel objected, arguing “There is no provision in the statute that allows the state to have a doctor evaluate her.” Defense counsel further argued that the court should appoint an expert to evaluate the defendant for placement. The court overruled the defense objection. The court later entered a one-sentence order directing the defendant “to submit to a risk assessment evaluation conducted by the expert retained by the State of Florida for such evaluation.”
This petition followed. The defendant argues that the order departs from the essential requirements of the law because: (1) no statute or rule authorizes a “risk assessment evaluation” of a defendant adjudicated incompetent; and (2) the order requires her to be examined by a state-retained expert instead of a court-appointed expert on a competency-related issue. We have jurisdiction to consider these arguments because once the evaluation occurs, it cannot be undone on appeal. Cf. Olges v. Dougherty, 856 So.2d 6, 10 (Fla. 1st DCA 2003) (in civil cases, “[ijnter-locutory orders requiring mental examinations are held to cause harm of a kind that *1042 cannot be remedied on appeal from final judgment.... [T]he required element of irreparable harm may be found based on the notion that once the invasive harm of the examination occurs, it cannot be undone on appeal.”) (citations and internal quotations omitted).
On the first argument, we conclude that the circuit court’s one-sentence order describing the evaluation to be conducted as a “risk assessment evaluation” is insufficient as a matter of law. Section 916.13(1), Florida Statutes (2011), authorizes a court to order what may be characterized as a “risk assessment evaluation” of a defendant adjudicated incompetent, but only as part of a broader evaluation of whether the defendant may be involuntarily committed for treatment. Section 916.13(1), entitled “Involuntary commitment of defendant adjudicated incompetent,” provides:
Every defendant who is charged with a felony and who is adjudicated incompetent to proceed may be involuntarily committed for treatment upon a finding by the court of clear and convincing evidence that:
(a)The defendant has a mental illness and because of the mental illness:

1. The defendant is manifestly incapable of surviving alone or with the help of willing and responsible family or friends, including available alternative services, and,, without treatment, the defendant is likely to suffer from neglect or refuse to care for herself or himself and such neglect or refusal poses a real and present threat of substantial harm to the defendant’s well-being; or

2. There is a substantial likelihood that in the near future the defendant will inflict serious bod,ily harm on herself or himself or another person, as evidenced by recent behavior causing, attempting, or threatening such harm;

(b) All available, less restrictive treatment alternatives, including treatment in community residential facilities or community inpatient or outpatient settings, which would offer an opportunity for improvement of the defendant’s condition have been judged to be inappropriate; and
(c) There is a substantial probability that the mental illness causing the defendant’s incompetence will respond to treatment and the defendant will regain competency to proceed in the reasonably foreseeable future.
(emphasis added).
The emphasized language, which may be characterized as a “risk assessment evaluation,” is only part of the broader evaluation authorized under the entirety of section 916.13(1) to determine whether a defendant adjudicated incompetent may be involuntarily committed for treatment. Thus, the circuit court’s one-sentence order describing the evaluation to be conducted as a “risk assessment evaluation” is insufficient as a matter of law. Rather, the order should have described the evaluation as an “involuntary commitment evaluation,” i.e., an evaluation to determine whether the defendant may be involuntarily committed for treatment under section 916.13(1). The order then should have described the scope of the evaluation by tracking verbatim the criteria contained in subsections (a), (b), and (c) of section 916.13(1). Cf Fla. R.Crim. P. 3.210(b)(4) (2011) (order appointing experts to determine whether the defendant is incompetent must: “(A) identify the purpose or purposes of the evaluation, including the nature of the material proceeding, and specify the area or areas of inquiry that should be addressed by the evaluator; (B) specify the legal criteria to be applied; and (C) specify the date by which the report should be submitted and to whom *1043 the report should be submitted.”). See also Fla. R.Crim. P. 3.210(b)(4), Committee Notes 1988 Amendment (rule 3.210(b)(4) requires specificity in the order because such court-appointed experts “often do not understand the specific purpose of their examination or the specifics of the legal criteria to be applied.”).
On the second argument, we agree with the defendant that the order improperly requires her to be examined by a state-retained expert instead of a court-appointed expert on a competency-related issue. As our supreme court stated in Caraballo v. State, 39 So.3d 1234 (Fla.2010):
It is well-settled that a criminal prosecution may not move forward at any material stage of a criminal proceeding against a defendant who is incompetent to proceed.... This fundamental principle is grounded in the right to due process of law, a right which is afforded to criminal defendants under both the United States Constitution and the Florida Constitution.
As a result of the court’s obligation to ensure that the material stages of a prosecution not proceed against a criminal defendant while the defendant is mentally incompetent, any defendant may be subjected to a mandatory competency evaluation and, consequently, subjected to the risk of saying something or responding in a manner that is detrime?ital to or incriminates the defendant. It is for this reason that the protection of confidentiality is afforded to the substance of a defendant’s competency evaluation.
Id. at 1252-53 (emphasis added; internal citations omitted).
Given the foregoing principle, no statute or rule allows the state to retain an expert to examine a defendant on a competency-related issue. Cf. State v. Zapetis, 629 So.2d 861, 861-62 (Fla. 4th DCA 1993) (denying state’s petition for writ of certiorari seeking to conduct its own neu-ropsychological examination of a defendant before a hearing on the defendant’s competency to stand trial). The same reasoning justifies the conclusion that court-appointed experts, and not state-retained experts, must be used to determine whether a defendant adjudicated incompetent may be involuntarily committed for treatment. Cf. Parkin v. State, 238 So.2d 817, 821 (Fla.1970) (“Experts appointed by the Court to ascertain mental capacity are neither prosecution nor defense witnesses, but neutral experts working for the Court, and their findings and opinions are subject to testing for truth and reliability by both prosecution and defense counsel.”).
We recognize that our supreme court, by its rules, has allowed the state to appoint experts to examine a defendant when the defendant asserts a mental health defense such as insanity or has put his or her mental health at issue during the penalty phase of a case. See, e.g., Fla. R.Crim. P. 3.216(d) (2011) (allowing the court to order the defendant to be examined by the state’s mental health experts as to sanity at the time of the alleged offense or violation); Fla. R.Crim. P. 3.202 (2011) (during the penalty phase of a capital case, if the defendant gives notice of an intent to present the testimony of a mental health expert who has examined the defendant, the state may appoint its own mental health expert to examine the defendant). The reason that the court has allowed the state to appoint experts to examine a defendant when the defendant asserts a mental health defense is to “level the playing field.” See Dillbeck v. State, 643 So.2d 1027, 1030 (Fla.1994) (where the defendant planned to present mitigating evidence in the penalty phase through defense mental *1044 health experts who had interviewed him, the trial court did not abuse its discretion in “striving to level the playing field” by ordering the defendant to submit to a pre-penalty phase interview with the state’s expert); State v. Hickson, 630 So.2d 172, 176 (Fla.1993) (“If a defendant decides that she wants to rely on her expert’s relating the battered-spouse syndrome to the facts of her case .... [allowing the state’s expert to examine a defendant will keep the state from being unduly prejudiced because a defendant will not be able to rely on expert testimony that the state has no effective means of rebutting.”) (footnote omitted). Here, the defendant has not asserted a mental health defense and the defendant’s mental health is not at issue during the penalty phase of the case.
This dichotomy regarding the appointment of experts, depending on the nature of the examination, is recognized by section 916.115, Florida Statutes (2011). Section 916.115 initially states in subsection (1): “The court shall appoint no more than three experts to determine the mental condition of a defendant in a criminal case, including competency to proceed, insanity, involuntary placement, and treatment.” (emphasis added). However, subsection (2) states: “If an expert appointed by the court upon motion of counsel for the defendant specifically to evaluate the competence of the defendant to proceed also addresses issues related to sanity as an affirmative defense, the court shall pay only for that portion of the expert’s fees relating to the evaluation on competency to proceed, and the balance of the fees shall be chargeable to the defense.” (emphasis added). Similarly, subsection (2)(b) states that “the office of the state attorney shall pay for any expert retained by the office and for any expert whom the office retains and whom the office moves the court to appoint in order to ensure that the expert has access to the defendant.” (emphasis added).
In reaching our conclusion, we distinguish Davis v. State, case no. 4D11-3303 (Fla. 4th DCA Dec. 9, 2011), where we denied another defendant’s petition for writ of certiorari by an unpublished order. In Davis, the defendant filed a petition for writ of certiorari seeking to quash a circuit court order directing him to submit to a “violence risk assessment.” Although the order was described as a “violence risk assessment” and did not track verbatim the criteria contained in subsections (a), (b), and (c) of section 916.13(1), the order contained some specificity which appeared relevant to section 916.13(l)(a)2.’s criteria. The order also directed that a court-appointed expert, and not a state-retained expert, conduct the evaluation. Therefore, we denied the petition because the circuit court’s order did not depart from the essential requirements of the law. Our opinion in this case now mandates that an order requiring a defendant to submit to an involuntary commitment evaluation under section 916.13(1) must involve a court-appointed expert (or experts) and must track verbatim the criteria contained in subsections (a), (b), and (c) of section 916.13(1).
Based on the foregoing, we grant the petition and quash the order at issue. We remand for the circuit court to appoint its own expert(s) to determine whether the defendant may be involuntarily committed for treatment under section 916.13(1). The order shall describe the scope of the evaluation by tracking verbatim the criteria contained in subsections (a), (b), and (c) of section 916.13(1).

Petition granted.

HAZOURI, DAMOORGIAN and GERBER, JJ., concur.